IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA EVANS,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION LONG TERM DISABILITY PLAN,<br><br>Defendant.<br>                                                                 / | No. C 11-06271 WHA<br><br>**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this ERISA disability action, both parties move for summary judgment on the administrative record. For the reasons stated below, the motions are **DENIED**.[*]

**STATEMENT**

Defendant Bank of America Corporation Long Term Disability Plan was an ERISA plan. Aetna Insurance Corporation, which is not a named party in this action, was the insurer and administrator of the plan.

From 2006 to 2009, plaintiff Yolanda Evans, a 53-year-old woman, worked at Bank of America Corporation as an assistant vice president and cash management treasurer analyst. According to Bank of America, Evans's job duties included "sitting for hours, frequent visits to

---

   * Although defendant's motion is titled as a Rule 52 judgment of partial findings, it is properly adjudicated as a motion for summary judgment on the administrative record. *Zurndorfer v. Unum Life Ins. Co. of America*; 543 F.Supp.2d 242, 255 (S.D.N.Y. 2008); *see also Stephan v. Unum Life Ins. Co. of America*, — F.3d —, 2012 WL 3983767, at *10 (9th Cir. Sept. 12, 2012).

1  clients, [and carrying] a laptop and documents" (AR 130). As will be important for reasons

2  discussed later, Evans was required to drive a car to meet her clients (*see* AR 300, 424, 434). In

3  July 2009, Evans left her job due to alleged back pain (AR 150).

### 1. MEDICAL REPORTS PRIOR TO AND INCLUDING JANUARY 4, 2010.

Shortly after Evans left her job, she was diagnosed by her treating physicians, Drs. Alfred Rothman and Michael Park, with lumbar disc displacement and cauda equina syndrome, a neurologic condition with compression of spinal cord nerves. These diagnoses were based on an MRI and examination findings of numbness and pain in her back and right leg (AR 189–91, 470, 475, 499). A month later, Evans fell while getting into the bathtub and afterward began to lose feeling in her bowel and pelvic area. This exacerbation of her preexisting condition necessitated surgery. In August 2009, Dr. Ronnie Mimran, a neurosurgeon, performed a laminectomy, which is surgery that relieves pressure on the nerves by removing vertebral bone, to treat Evans's acute condition (AR 195–98). In a post-op visit two weeks after surgery, Dr. Mimran opined that Evans would not be able to return to work until October 2009 (AR 189). In early October, however, Dr. Mimran extended Evans's return to work date to November 2009 and prescribed physical therapy (AR 237, 242). By the end of October, Dr. Mimran opined that Evans had improved to "[m]oderate limitation of functional capacity/capable of light work," and that she could return to full duty by January 2010 (AR 245–47).

On January 4, 2010 (an important date in this action), Dr. Mimran examined Evans and wrote the following to Dr. Rothman, Evans's primary care physician (AR 323):

> [Evans] has not returned to work, nor does she feel like she is currently able to. She continues to walk with a cane, despite her [physical] therapist indicating that she probably does not need it any more. I have talked to her about starting to liberalize her activities and advance her tolerance. She seems to have a hesitancy to do so. I have told her that in order to go back to work it is going to be important for her to give it a try and start to explore what she is able to do, and she is not going to know this until she starts to go back.

Dr. Mimran opined that while Evans still had "some patches of numbness" on the right side in the buttock and lower leg, "most of the motor strength has returned" (AR 323). Dr. Mimran did

2

not give another return to work date and he did not examine Evans again after January 4, 2010 (AR 322).

By the end of January 2010, Aetna had requested two independent medical reviews of Evans's medical file. Both reviewers, Drs. Eugene Collins and Deppak Awasthi, opined that Evans was no longer disabled as of November 2009 (AR 333–35, 342–46). Both reviewers based their opinion on a lack of evidence of functional impairment. Dubiously, one of Aetna's reviewers, Dr. Awasthi, conducted his evaluation in November 2009 but somehow opined that there was no evidence to support function impairment up to January 2010, three months *after* his review (AR 335). This, of course, raises serious doubts as to the reliability of Dr. Awasthi's report. For unexplained reasons, Aetna rejected the opinions of these two independent medical reviewers and instead found that Evans *was* disabled up to January 3, 2010 (AR 417–18). Thus, Evans received short-term disability benefits from the time she left her job in July 2009 until January 2010.

### 2.  MEDICAL REPORTS AFTER JANUARY 4, 2010.

In February 2010, Dr. Park, a specialist in spinal rehabilitation who had been treating Evans since she left work, opined that Evans continued to experience sciatic pain down her right leg, pain in her L5 spine, and numbness in her lateral calf on right side. He concluded that she was not able to return to work due to the pain and because repetitive activities caused her aggravation (AR 349–50). Based on his assessment, Dr. Park indicated that Evans would not be able to return to work until September 2010 (AR 460).

In January 2010, Evans's physical therapist noted that she was "very slowly nearing the goals" with "pain being the limiting factor" (AR 360). Her physical therapist also noted that she still required a "cane/handrails and all movements limited and painful" (*ibid.*). By March 2010, after many sessions, Evans's physical therapist noted that she continued to be symptomatic with "neural tension and sensory changes [in lower right extremities]" (AR 361).

In April 2010, Aetna requested another independent medical review from yet another physician, Dr. Eugene Collins. Again, Aetna's independent reviewer only evaluated Evans's medical file without conducting an in-person examination. Dr. Collins reviewed Evans's

physical therapy notes and Dr. Park's reports. Dr. Collins spoke with Dr. Mimran, Evans's surgeon, but did not speak with Dr. Park. After reviewing Evans's medical history, Dr. Collins credited the January 4 opinion of Dr. Mimran and concluded that Evans was not disabled after January 4, 2010. Again, recall that Dr. Mimran saw Evans on January 4 and suggested that she should try returning to work. Dr. Collin also found a lack of "documented information that reveals a major anatomical or neurological deficit that would be of functional significance" (AR 371). Dr. Collins rejected Dr. Park's February 2010 opinion that Evans could not return to work (AR 368–72). In doing so, Dr. Collins did not address Dr. Park's findings of sciatic pain down Evans's right leg, pain in her L5 spine, and numbness in her lateral calf on right side. Nor did Dr. Collins address whether Evans's physical impairments would prevent her from fulfilling the functions of her prior job, where she had to driving back and forth to see clients. Nor did Dr. Collins evaluate whether Evans's pain narcotics limited her ability to drive or perform other cognitive abilities associated with her prior job as assistant vice president. Dr. Collins merely noted that Evans was not disabled because she would be able to perform a "light level position" because she was "capable of lifting and carrying 20-pounds occasionally and up to 10-pounds frequently" (AR 371).

In June 2010, Aetna advised Evans that her claim for long-term benefits was denied, effective January 4, 2010 (the day after termination of her short-term benefits) (AR 412–14). This denial was based on Dr. Collin's paper-only review, and Dr. Mimran's January 4 statement that Evans could try going back to work.

**3. APPEAL.**

Evans appealed the initial denial and submitted new medical opinions in support of her disability. Below is a summary of the information submitted in support of disability and not previously reviewed by Aetna.

On January 5, 2010, Evans reported to Dr. Rothman, her primary care physician, that she was only able to sit up "for 1 hr" per day after which time her back and right leg would be "killing her." Dr. Rothman observed that Evans's right leg was swollen, and her back pain had increased. Dr. Rothman continued to prescribe daily gabapentin and vicodin, a pain narcotic

4

(AR 503). These physical findings were consistent with Dr. Rothman's past observations of Evans's disability (AR 502). In another visit in March 2010, Dr. Rothman wrote, in slightly difficult-to-read handwriting, that Evans was "still on disability" and continued to have "ankle pain" (AR 504).

In May 2010, Dr. Park again certified that Evans was still unable to go back to work due to sciatic pain that radiated down her right leg, right leg numbness, and lower back pain aggravated with repetitive activities (AR 430, *see also* AR456). A few months earlier, Dr. Park had noted that her "back [was] much better" (AR 354).

Evans subsequently moved to Texas, where she saw a new treating physician, Dr. Jeffrey Dehaan, an orthopedic surgeon. In August 2010, Dr. Dehaan opined that Evans could not return to work due to "unremitting back and lower extremity pain" (AR 512). On physical examination, Dr. Dehaan noted "pain reproduced with [straight leg raises] sign in the right leg," which was a clinical test designed to elicit signs of nerve root compression, secondary to lumbar disc herniation. Dr. Dehaan also noted that Evans had absent ankle reflexes in the right ankle and she had weakness of the anterior tibia on the right ankle (*ibid*). These findings were consistent with the prior assessment by Evans's physical therapist, who had also found positive straight leg raise tests (AR 439).

Evans herself wrote to Aetna that she continued to have two primary problems that prevented her from returning to work: right leg numbness and pain in her back. She wrote that these problems prevented her from sitting for eight hours per day and driving to see clients. She also wrote that she continued to take gabapentin and vicodin, both of which prevent her from driving (AR 424–25).

**4.    DECISION ON APPEAL.**

After receiving the new information on appeal, Aetna requested another independent medical review. This time, Dr. Robert Swotinsky, a specialist of occupational medicine, conducted a review of Evans's medical history, including the additional materials submitted on appeal (AR 542–43). This again was a paper-only review without an in-person examination. As with Aetna's prior independent medical reviewers, Dr. Swotinsky also concluded that Evans was

5

no longer disabled as of January 4, 2010. Dr. Swotinksy rejected the post-January 4 disability opinions by Evans's treating physicians, Drs. Park, Rothman, and Dehaan. Dr. Swotinsky's report will be discussed in greater detail below.

Because every treating physician who examined Evans after January 2010 reported that she still could not return to work, Aetna had to rely solely on Dr. Swotinsky's medical judgment of non-disability on appeal. Aetna ultimately denied Evans's claim due to a "lack of medical evidence" to support an inability to perform the material duties of Evans's own occupation after January 4, 2010 (AR 522–24). This action followed.

## ANALYSIS

**1.  SUMMARY JUDGMENT ON AN ABUSE-OF-DISCRETION STANDARD.**

Our court of appeals recently summarized a court's role on summary judgment in reviewing a plan administrator's denial of disability under an abuse-of-discretion standard, with structural conflict of interest, as follows:

> Under this deferential standard, a plan administrator's decision will not be disturbed if reasonable. This reasonableness standard requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.
>
> This abuse of discretion standard, however, is not the end of the story. Instead, the degree of skepticism with which we regard a plan administrator's decision when determining whether the administrator abused its discretion varies based upon the extent to which the decision appears to have been affected by a conflict of interest.
>
> \*     \*     \*
>
> While not altering the standard of review itself, the existence of a conflict of interest is a factor to be considered in determining whether a plan administrator has abused its discretion. The weight of this factor depends upon the likelihood that the conflict impacted the administrator's decisionmaking. Where, for example, an insurer has taken active steps to reduce potential bias and to promote accuracy, the conflict may be given minimal weight in reviewing the insurer's benefits decisions. In contrast, where circumstances suggest a higher likelihood that the conflict affected the benefits decision, the conflict should prove more important (perhaps of great importance).
>
> \*     \*     \*

6

> Traditional summary judgment principles have limited application in ERISA cases governed by the abuse of discretion standard. Where, as here, the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is, in most respects, merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

*Stephan v. Unum Life Ins. Co. of America*, — F.3d —, 2012 WL 3983767, at *8–10 (9th Cir. Sept. 12, 2012) (internal quotation marks and citations omitted).

Here, the parties agree that the abuse-of-discretion standard applies and that the Court's review should be limited to the administrative record (Dkt. No. 10). Notably, Aetna had a structural conflict of interest because it both paid disability benefits and made disability determinations for the plan.

**2.    PLAN TERMS FOR LONG-TERM DISABILITY AND SHORT-TERM DISABILITY BENEFITS.**

This action is a dispute over whether Evans qualified for long-term disability benefits after January 4, 2010. The plan terms regarding long-term disability stated (AR 4):

> From the date that you first become disabled and until Monthly Benefits are payable for 18 months, you will be deemed to be disabled on any day if:
>
> > you are not able to perform the material duties of your own occupation solely because of: disease or injury; and
> >
> > your work earnings are 80% or less of your adjusted predisability earnings.
>
> After the first 18 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of:
>
> > disease; or injury.

To summarize, in order for plan participants to receive long-term disability benefits for the first 18 months of disability, they had to show that they were not able to perform the material duties of their prior occupations. After 18 months of benefit payment, participants needed to show that they were not able to perform any reasonable occupation in order to qualify for continued benefits.

7

Under the plan terms, participants received short-term benefits for the first six months of disability if they were unable "to perform his or her essential occupation functions" (AR 107). Confusingly, this meant that the first six months of disability benefits were labeled "short-term disability" even though it overlapped with the plan's definition of "long-term disability" for the first 18 months.

Importantly, Evans had received short-term benefits for the first six months of her disability, from July 2009 to January 2010. Aetna had determined that Evans qualified for short-term benefits because she was unable to perform her prior occupational functions until January 2010 (AR 417). Subsequently, Aetna denied long-term disability benefits due to "a lack of medical evidence" showing that she could not return to her former job. Because the plan's disability criteria for short-term disability in the first six months and longer-term disability for the next 12 months are virtually identical, Evans would have necessarily qualified for disability benefits for 12 additional months, until January 2011, under the plan's terms.

### 3. PROBLEMS WITH ADOPTING DR. SWOTINSKY'S REVIEW.

Aetna was required on appeal to consult with a physician to reject the disability opinions of Drs. Park, Rothman, and Dehaan. 29 C.F.R. 2560.503-1(h)(3). Aetna relied on the consulting opinion of Dr. Swotinsky, who concluded that Evans was not "completely disabled" (AR 547).

Dr. Swotinsky's opinion of disability, however, was problematic for several reasons. *First*, he erroneously equated Evans's inability to perform her prior occupation with "complete disability," as defined in the Social Security Administration Blue Book. Specifically, Dr. Swotinsky determined that Evans's medical condition did not satisfy the requirement for "complete disability from spine disorders, as defined by SSA Blue Book, [which] fall into three categories: Nerve root compression, spinal arachnoiditis, and lumbar spinal stenosis" (AR 546). Because Dr. Swotinsky determined that Evans did not have the medical diagnoses of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, he concluded that she could return to her prior occupation (AR 546–47). This incorporation of social security disability requirements into Evans's disability determination was wrong as a matter of law because "the rules and presumptions of our Social Security case law do not apply to ERISA benefits

8

determinations." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 873 (9th Cir. 2008).

*Second*, Dr. Swotinsky did not understand Evans's job responsibilities in her prior occupation. Dr. Swotinsky determined that her prior occupation "ha[d] essentially no physical requirements," ignoring Bank of America's and Evans's description of her prior occupation as involving "sales, sitting for hours, fr[e]quent visits to clients, [and] has to carry a laptop and documents," and driving to meet clients (*see* AR 130, 300, 424, 434). In fact, Dr. Swotinsky wrote, "the question of disability is about performing the essential duties of [Evans's prior occupation], *not about driving a car*" (AR 547) (emphasis added). This was a factually incorrect statement about Evans's prior job duties because she frequently drove to meet clients. *Third*, Dr. Swotinsky did not provide any justification for rejecting Dr. Rothman's disability opinion. *Fourth*, Dr. Swotinsky did not provide any justification for rejecting Dr. Park's disability opinion and his findings of sciatic pain down Evans's right leg, pain in her L5 spine, and numbness in her lateral calf on right side. *Fifth*, Dr. Swotinsky did not provide any specific reasons for rejecting Dr. Dehaan's findings of "unremitting back and lower extremity pain," "pain reproduced with [straight leg raises] sign in the right leg," and absence of reflexes in her right ankle (AR 512).

### 4. AETNA'S SUMMARILY REJECTION OF DISABILITY OPINIONS BY TREATING PHYSICIANS WAS PROBLEMATIC.

In addition to relying on Dr. Swotinsky's problematic conclusion of non-disability, Aetna also summarily rejected disability opinions by Evans's treating physicians. "Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

*First*, in rejecting Dr. Park's disability opinion, Aetna conclusory stated that "[Dr. Park] did not provide any abnormal examination findings that substantiated any physical deficits in your functioning" (AR 524). That was a demonstrably incorrect statement. Dr. Park, who had been treating Evans for nearly a year, consistently found numbness and pain on Evans's lower right side, extending from her back to her foot. Before Evans's surgery, Dr. Park noted an

9

abnormal MRI showing disc compression and herniation (AR 185, 349). After January 4, 2010, Dr. Park continued to report that Evans was still experiencing sciatic pain down her right leg, pain in her L5 spine, and the "same" numbness in her lateral calf on right side. Dr. Park concluded that Evans was disabled due to pain and because repetitive activities caused her aggravation (AR 349–50, 456). Aetna rejected these abnormal findings without explanation.

*Second*, Aetna did not address Dr. Rothman's disability opinion. Dr. Rothman, who had been treating Evans for over a year, had also consistently found numbness and pain on Evans's lower right side from her back extending to her foot. Before Evans's surgery, Dr. Rothman noted that on physical examination, Evans had decreased sensation to light touch, decreased reflexes, and decreased range of motion due to pain (AR 472). After January 4, 2010, Dr. Rothman continued to find that Evans was "still on disability" and continued to have "ankle pain" (AR 504). Aetna gave no reason for rejecting Dr. Rothman's physical findings.

*Third*, Aetna erroneously rejected Dr. Dehaan's disability opinion. In August 2010, Dr. Dehaan wrote that Evans could not return to work due to "unremitting back and lower extremity pain" and inability to tolerate doing much activity (AR 512). Like Evans's other treating physicians, he also noted "pain reproduced with [straight leg raises] sign in the right leg" and absence of ankle reflexes in the right ankle (*ibid*). Aetna did not give any reasons for rejecting Dr. Dehaan's abnormal findings. Instead, Aetna discounted Dr. Dehaan's disability opinion for an erroneous reason: At one point, Dr. Dehaan had written a short note that "Evans [was] unable to work because of back sciatica / caudia equina [syndrome] / arachnoiditis" (AR 515). Dr. Dehaan subsequently retracted his opinion that Evans suffered from arachnoiditis, which is an inflammation of the spinal membrane. Based *solely* on his partial retraction of finding arachnoiditis, Aetna rejected Dr. Dehaan's entire disability opinion (AR 524). This was a factual misinterpretation of Dr. Dehaan's opinion.

*Fourth*, Aetna erroneously concluded that "there was no documentation that [Evans was] suffering from any adverse affects [sic] to any prescribed medication" (AR 523). This erroneous statement ignored Evans's letter to Aetna stating that her prescribed medications impaired her from driving to see clients, which was an essential duty of her prior occupation (AR 424). More

10

importantly, Aetna and its medical reviewers all failed to assess how Evans's medical condition, which included lower right side numbness and lack of ankle reflex, would impact her ability to drive, which was an essential duty of her prior occupation.

*Fifth*, Aetna initially, and ultimately, denied Evans's claim for a "lack of medical evidence" (AR 426–27, 522–24). However, Aetna failed to inform Evans what specific medical evidence it needed in order to assess her disability. In particular, Aetna did not provide Evans with even one of the four medical reports by Aetna's independent reviewers. As our court of appeals has held, "the administrator was obligated to say in plain language what additional evidence it needed and what questions it needed answered in time so that the claimant could provide the additional material could be provided." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 680 (9th Cir. 2011). Aetna knew that Evans had been diagnosed with herniated disk, cauda equina syndrome, degenerative disk disease, and ankle swelling, but did not provide any guidance to Evans about what "medical evidence" was needed to show disability (AR 523).

It should also be noted that Aetna's choice to conduct independent medical reviews solely on the papers rather than an in-person medical evaluation "raises questions about the thoroughness and accuracy of the benefits determination." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009). A paper-only review is especially problematic here, where Aetna has completely rejected Evans's subjective complaints of pain as a basis for her functional impairment. Our court of appeals has held that complaints of pain cannot be disregarded without adequate explanation. Specifically, it is unreasonable to reject complaints of pain solely on the basis of lack of "objective proof of [claimaint's] pain level" or observations that the medical condition "should not cause [claimant] as much pain as he was reportedly suffering." *Montour*, 588 F.3d at 634–35 (9th Cir. 2009). None of Evans's treating physicians ever stated that her pain was unexplained, exaggerated, or somehow not to be believed. Only Dr. Swotinsky, who was paid by Aetna and who never examined Evans, found that her pain was of an "unclear" cause (AR 547).

*Lastly*, Aetna failed to provide an adequate explanation for why it granted short-term disability until January 4, 2010, but then denied long-term disability after January 4, 2010, for "lack of medical evidence" (AR 524). Per the plan terms, there was no material difference between the criteria for short-term disability, "inability to perform his or her essential occupation functions," and long-term disability for the first 18 months, "not able to perform the material duties of your own occupation" (AR 4, 107). Aetna apparently found sufficient medical evidence in the administrative record showing that Evans was not able to perform her prior job duties on January 3, 2010, but determined that the same medical evidence was insufficient the next day on January 4, 2010. The only change in the record on January 4, 2010, was Dr. Mimran's letter to Dr. Rothman (AR 323):

> [Evans] has not returned to work, nor does she feel like she is currently able to. She continues to walk with a cane, despite her [physical] therapist indicating that she probably does not need it any more. I have talked to her about starting to liberalize her activities and advance her tolerance. She seems to have a hesitancy to do so. I have told her that in order to go back to work it is going to be important for her to give it a try and start to explore what she is able to do, and she is not going to know this until she starts to go back.

This letter did not indicate that Evans's prior abnormal examination findings — numbness, absence of reflexes, and pain — had improved. This letter did not indicate that Evans was better controlled on her pain medication.

To review, Aetna's initial denial of benefits rested almost entirely on Dr. Mimran's letter and later communication with Dr. Collins (AR 413). Evans responded to Aetna's initial denial by submitting additional evidence of disability from three treating physicians and her physical therapist. Aetna gave vague and demonstrably incorrect reasons for rejecting these new physical findings and opinions. Aetna then found that Evans could return to her prior occupation even though no physician opined that Evans was able to drive a car to see clients, a daily and frequent aspect of her prior occupation, despite her lower right side numbness and lack of ankle reflex.

**5.    DISCOVERY.**

Further discovery may provide answers absent in the administrative record: *First*, how does Aetna's structural conflict of interest influence its hiring of "independent reviewing

physicians"? Do physicians hired by Aetna find non-disability in the vast majority of referrals? Does that percentage differ for in-person versus on-the-papers reviews? *Second*, how often do the four reviewing physician in this action find non-disability in favor of Aetna? *Third*, the details of Dr. Collin's hearsay statement that Dr. Mimran opined that Evans could return to work. *Fourth*, did Dr. Mimran understand that Evans had to drive a car as part of her prior occupation? Did any treating or reviewing physician? *Fifth*, how often did Evans have to drive in her prior occupation? *Sixth*, what did the MRI taken by Dr. Dehaan show? These are just some of the questions that could shed light on whether Evans received the full and fair review required by statute.

## CONCLUSION

For the reasons stated above, the motions for summary judgment are **DENIED**. A case management scheduling order will be issued.

**IT IS SO ORDERED.**

Dated: October 25, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE